```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
Peter Knight,
                                              MEMORANDUM AND ORDER
                Petitioner,

    -against-
                                              Civil Action No.
United States of America,                     04-CV-5301 (DGT)

                Respondent.
---------------------------------------X
```

TRAGER, J.:

    Petitioner Peter Knight ("Knight" or "petitioner") pled guilty to conspiracy to possess with intent to distribute a substance containing cocaine base in an amount of five grams or more in violation of United States Code, Title 21, Section 846. On November 4, 2003, he was sentenced to the statutory minimum of 60 months imprisonment. Petitioner now moves pursuant to section 2255 to vacate the sentence, claiming that he received ineffective assistance of counsel at the sentencing hearing. Specifically, petitioner alleges that defense counsel's failure to pursue an exemption from the statutory minimum sentence under United States Code, Title 18, Section 3553(f), commonly referred to as the "safety valve," prevented him from obtaining a lesser sentence. In opposition, the government contends that: (1) petitioner waived the right to appeal his sentence in the plea agreement; (2) petitioner did not qualify for the safety valve exemption; and (3) petitioner did not receive ineffective

assistance of counsel during the sentencing hearing.

## Background

On May 1, 2001, petitioner was arrested and charged with four drug-related counts involving an alleged conspiracy with three other individuals to distribute cocaine and cocaine base. Decl. of Mark Gimpel ("Gimpel Decl.") ¶ 3. Petitioner subsequently entered into a plea agreement with the United States Attorney's Office for the Eastern District of New York, agreeing to plead guilty to Count Two of the indictment (conspiracy to possess with intent to distribute more than five grams of cocaine base) and to waive his right to appeal or otherwise challenge any sentence under 71 months. Id. ¶¶ 5, 7; Plea Agreement ¶ 4. The government agreed to dismiss all other charges against petitioner. Gimpel Decl. ¶ 5. On October 1, 2002, petitioner's plea of guilty was accepted by the district court. Id. ¶ 8.

At the plea allocution, Assistant United States Attorney Tracy Lee Dayton ("AUSA Dayton") summarized the government's supporting evidence as follows:

> Based upon the electronic surveillance in terms
> of videotape surveillance and consensual
> recordings of telephone conversations and
> personal recordings the Government believes that
> it could prove that Mr. Knight was selling
> cocaine and in fact provided cocaine to an
> undercover FBI agent through intermediaries on
> multiple occasions, and that he also was

2

>providing powder cocaine with knowledge that it was going to be cooked into crack cocaine and that it was in fact cooked into crack cocaine on at least one occasion.

Plea Tr. 19. When given the opportunity to contradict the government's allegations, petitioner did not do so:

>THE COURT: Okay. Mr. Knight, have you heard the statement of the Assistant U.S. Attorney?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Is it correct?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Do you disagree with any part of the statement?
>
>THE DEFENDANT: No, sir.

Id. Petitioner was also advised that if he did not proffer full and truthful information about his participation in the conspiracy, as required to qualify for the safety valve reduction, the minimum sentence for the offense would be 60 months. Plea Tr. 16. Petitioner's trial counsel, David Jacobs, stated: "[The sentence] would be 60 months if he doesn't proffer automatically . . . . If he does proffer successfully it would go down to a level 21 which is 37 to 46 months." Id. at 16-17. Pursuant to the plea agreement, petitioner would waived his right to appeal any sentence of 71 months or below. Plea Agreement ¶ 4.

Over one year later, on October 15, 2003, petitioner,

3

accompanied by Jacobs, met with Dayton for a safety valve proffer session at the United States Attorney's Office in the Eastern District of New York.  Gov.'s Mem. of Law in Opp'n to the Pet. ("Gov.'s Mem.") 4.  At the outset of the session, petitioner effectively stated, "I'm not a drug dealer, I don't sell drugs." Decl. of David S. Jacobs ("Jacobs Decl.") ¶ 4.  He also denied involvement in any drug-related activities with his indicted co-conspirators, despite the fact that the government possessed audio and video evidence of petitioner discussing drug sales with, and providing drugs to, those individuals.  Gov.'s Mem. 4. In addition, petitioner refused to divulge the identity of his cocaine supplier, id., claiming that he had no regular source:

> [Knight] then said that he would drive uptown to
> Harlem where he would buy the powder cocaine
> from Dominicans.  He said that drug dealers
> would approach him and offer to sell him
> cocaine.  This was not done by pre-arrangement,
> he did not know their names, and these purchases
> were made on various streets from various
> individuals.

Jacobs Decl. ¶ 4.  Frustrated by petitioner's lack of cooperation, Dayton "threw up her hands, and replied in words or substance, 'we're done here,' because Mr. Knight had denied the very conduct which he had admitted to before Judge Trager when he entered his guilty plea."  Id. ¶ 4.  In light of the substantial surveillance evidence gathered by the government, Dayton went on to say that "she did not believe Mr. Knight, that she had information contradicting his claim, and that she would consider

4

charging him with making false statements." Id. ¶ 5.  Even Jacobs, based on his own review of the government's evidence, "concluded that defendant's claim was not truthful." Id. ¶ 6.  Under these circumstances, the government refused to consent to a downward departure based on a successful safety valve proffer and the session was concluded by mutual agreement. Id.

At the sentencing on November 4, 2003, Judge Trager inquired why no downward departure motion was made pursuant to § 3553(f).  Sentencing Tr. 2.  Dayton then described the events of the safety valve proffer session: "[Knight] came to the office, stayed for five minutes and then he left." Id. at 3.  Petitioner was then given an opportunity to provide his own version of the session:

> THE COURT: I don't know the reason he can't [safety valve], but that's a different story. All right.  Does the defendant have anything he wants to say?
>
> MR. JACOBS: Do you want to address the Court?
>
> THE DEFENDANT: Not really.  You know, I told her everything I know to tell her.  She asked me and I told her what I did but she doesn't believe me.

Id.  Jacobs then interjected that "what happened in Ms. Dayton's office really has no relevancy at this point." Id. at 4.  He was convinced that petitioner's claim that "I told her everything I know to tell her" was not truthful, in light of the government's evidence and petitioner's failure to cooperate at the proffer session.  Jacobs Decl. ¶ 6.  Concerned that any further

5

insistence by petitioner that he had made a full and truthful disclosure at the proffer session could be construed as lying to the court and lead to further criminal liability, Jacobs declined to pursue safety valve protection for his client. Id. Accordingly, petitioner was sentenced to the statutory minimum for the conspiracy offense. See 21 U.S.C. § 841(b)(1)(B)(3). He was sentenced to 60 months imprisonment, five years supervised release, and a $100 special assessment. Sentencing Tr. 4. Petitioner filed the motion to vacate on December 6, 2004 pursuant to 28 U.S.C. § 2255. The government submitted its response on June 1, 2005 and petitioner replied on August 4, 2005. On May 25, 2006, Jacobs submitted an affidavit stating the reasons why he did not pursue the safety valve reduction. On August 8, 2006, petitioner submitted an affidavit that claims he was eligible for safety valve because he truthfully and fully proffered to the government and thus Jacobs' failure to pursue the reduction at the sentencing hearing constituted ineffective counsel.

   Pursuant to a request made by the defendant's present counsel, Mark Gimpel, an evidentiary hearing was held on October 11, 2007. Jacobs testified that at the proffer session, after the initial statement by petitioner claiming that he was not a drug dealer and did not sell drugs, Jacobs asked for a moment alone with the petitioner and remonstrated with petitioner.

Jacobs told petitioner to be truthful if he wanted to have an opportunity to have his sentence reduced. Evidentiary Hr'g Tr. at 4-6. Upon Dayton's return petitioner abandoned his claim that he did not sell drugs. Id. at 4.

Petitioner then gave the account of obtaining drugs from random suppliers. Jacobs testified that he had never heard this account before from the petitioner and he knew the government had taped phone conversations of petitioner attempting to obtain drugs. Id. at 6-10. Consequently, when the issue of the safety valve reduction came up at sentencing Jacobs stated that he did not pursue it because he was afraid that petitioner could lose his plea if he contradicted earlier statements made to the court. Id. at 6.

Despite his presence at the evidentiary hearing, petitioner did not take the stand to challenge Jacobs' account of the events or reiterate that he proffered truthfully and fully.

### Discussion

#### (1)

#### Waiver

The Second Circuit has repeatedly held that a knowing and voluntary waiver of the right to appeal a sentence within or below the stipulated Guidelines range shall be enforced. See, e.g., United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir.

7

2000); United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998) (holding that appeal of sentence under section 2255 was foreclosed by plea agreement where district court imposed a sentence within the range stipulated by the agreement). Waivers of appeal can be binding on both direct appeals and petitions brought under section 2255. Djelevic, 161 F.3d at 106; LoCurto v. United States, No. 05-CV-1327, 2006 WL 618412, at *12 (E.D.N.Y. Mar. 10, 2006) ("A knowing and voluntary waiver of a right to appeal constitutes a waiver to relief under 28 U.S.C. § 2255."); Defex v. United States, No. 97-CV-1891, 1998 WL 812572, at *2 (E.D.N.Y. May 19, 1998) (denying collateral review under section 2255 after the defendant waived right to appeal in plea agreement). Permitting defendants to appeal sentences conforming to plea agreements "would render the plea bargaining process and resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993).

The record reflects that petitioner knowingly and voluntarily waived his right to appeal or otherwise challenge his sentence. During his plea allocution, petitioner confirmed that he understood the provisions of his appellate waiver:

> COURT: . . . Is there any appellate waiver here?
>
> GOVERNMENT: Yes, there is, Your Honor.
>
> COURT: What is it?
>
> GOVERNMENT: In the event of the defendant sentenced below 57 [sic] months he's waived his right to

8

appeal.

COURT: Do you understand that?

DEFENDANT: Yes, sir.

COURT: That if you're sentenced to 57 [sic] months or less you can't appeal, cannot appeal. All right. Do you have any questions that you'd like to ask me about the charge, your rights, the guidelines, anything else that might be on your mind?

DEFENDANT: No, sir.

Plea Tr. 16:3-13.[1]

Petitioner asserts that his ineffective assistance of counsel claim is outside the scope of the waiver, and that because of the ineffective assistance, he could have not knowingly and intelligently entered into the waiver. Petr.'s Reply in Supp. of Mot. to Vacate at 5. The plea agreement clearly stipulates that the petitioner waives his ability to file an appeal <u>or otherwise challenge</u> a conviction of 71 months or below. Plea Agreement at ¶ 5 (emphasis added). "In most cases, a waiver of the right to appeal or otherwise challenge a conviction or sentence constitutes a waiver of the right to pursue a collateral attack on the conviction or sentence via a Section 2255 petition as well." <u>Yushuvayev v. United States</u>, 532 F. Supp. 2d 455, 468 (E.D.N.Y January 18, 2008) (citing <u>Garcia-Santos v. United States</u>, 273 F.3d 506 (2d Cir. 2001)).

---

[1] The actual plea agreement states that petitioner could not appeal a sentence 71 months or below. AUSA Dayton misstated that appellant waiver applied to sentences below 57 months.

Petitioner's claim that he could not have knowingly entered into the waiver is also without merit because petitioner alleges that the ineffectiveness of counsel occurred at the sentencing hearing, well after the plea agreement had been signed. Claims that counsel was ineffective prior to obtaining the plea may be grounds to challenge a waiver of appeal in the plea, See Yushuvayev, 532 F. Supp. 2d at 468-489, but that is not the situation here. Thus, petitioner has waived his right to challenge his sentence by way of § 2255.

### (2)

### Ineffective Assistance of Counsel

In any event, petitioner's claim of ineffective assistance of counsel fails on the merits. Petitioner argues that he is entitled to relief from his sentence based on his attorney's failure to assert his eligibility for safety valve protection despite petitioner's assertion that his statements at the proffer session were truthful and complete. Pl.'s Mem. 2. As a result, petitioner argues that he received a higher sentence than he would have if counsel had pursued the safety valve provision and, therefore, his conviction should be vacated due to ineffective assistance of counsel. Id.

In order to prove ineffective assistance of counsel, petitioner must meet the two-pronged test for ineffective

assistance set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must show that his attorney's performance was deficient. Id. at 687; Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001) (applying the Strickland test in petition for habeas corpus). An attorney's performance is judged by an objective standard of reasonableness, with a high degree of deference afforded to counsel's judgment. Strickland, 466 U.S. at 688-89; Loliscio, 263 F.3d at 192. Second, if the performance is shown to be deficient, petitioner must establish that the attorney's deficient performance prejudiced his defense. Strickland, 466 U.S. at 687. Prejudice is established when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Monzon, 359 F.3d at 119.

In this case, the dispositive issue is whether Jacob's failure to assert petitioner's eligibility for the "safety valve" constitutes ineffective assistance of counsel. Under the first prong of the Strickland test, it cannot be said that Jacobs' performance was below professional norms. It is clear from the record that prior to the proffer session, Jacobs had every intention to pursue safety valve protection for petitioner and that during the session he remonstrated with petitioner to cooperate in an effort to save the safety valve option. Jacobs' eventual decision not to do so was based on his assessment that

11

petitioner's responses at the proffer session were untruthful and incomplete, the government's explicit warning that it would not consent to a safety valve downward departure and AUSA Dayton's apparent hostility toward petitioner. Therefore, in order to prevent petitioner from making statements at sentencing that would obviously be contested by the government and would likely give the court a reason to question the truthfulness of the plea allocution, Jacobs chose not to press the safety valve issue. Petitioner's failure to take the stand at the evidentiary hearing was a telling indication that Jacobs' testimony on this point was accurate.

An attorney's strategic decisions made with the intent of limiting his client's exposure to a greater sentence are entitled to great deference. See, e.g., Monzon, 359 F.3d at 120 (finding that defense counsel had "skillfully intervened" to prevent his client from lying at a proffer session, which would have reduced the client's chance of gaining a safety-valve recommendation). The record suggests that Jacobs was fully informed of the evidence in the government's possession (i.e., intercepted conversations) with respect to petitioner's involvement and knowledge. Therefore, his action in preventing petitioner from giving contradictory, self-serving and presumably less credible testimony was a reasonable one. See Strickland, at 689 ("A court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance.").

Petitioner's claim that he received ineffective counsel is unsubstantiated and there is, therefore, no need to determine if the ineffectiveness prejudiced petitioner.

## Conclusion

In sum, armed with the earlier inconsistent statements made by petitioner and knowledge of the government's contradicting evidence to petitioner's proffer, Jacobs made a strategic decision to not pursue the safety valve reduction because it could have resulted in a longer sentence for petitioner. Counsel's judgment in such decisions is entitled to great deference. Petitioner has failed to rebut the reasonableness of Jacobs' strategy to prevent his client from losing his reduced sentence or show that he proffered truthfully and completely entitling him to safety valve. Accordingly, counsel was adequate and the waiver of appeal is enforceable. The petition is denied.

Dated:    Brooklyn, New York
          April 14, 2008

                              SO ORDERED:


                                   /s/
                              David G. Trager
                              United States District